# CONFIDENTIAL SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Confidential Settlement Agreement and General Release ("Agreement") is made and entered into by and between COGENT COMMUNICATIONS, INC. ("COGENT") and MARK RYAN ALLEN on behalf of himself, his heirs, executors, administrators, successors, and assigns (singularly and collectively referred to throughout this Agreement as "ALLEN").

WHEREAS, a bona fide dispute has arisen between ALLEN and COGENT concerning allegations that ALLEN has made in a Complaint styled as *Mark Ryan Allen, et al. v. Cogent Communications, Inc.*, Civil Action No. 1:14-cv-00459-JCC-TRJ, currently pending in the United States District Court for the Eastern District of Virginia, Alexandria Division (referred to hereafter as the "Lawsuit");

WHEREAS, COGENT denies the validity of ALLEN's claims and denies that it is subject to any liability;

WHEREAS, the parties wish to resolve and settle their differences without resort to further litigation; and

NOW, THEREFORE, in consideration of the foregoing and the mutual covenants and agreements set forth herein, which covenants and agreements constitute good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree to be legally bound by the following terms and conditions, which constitute full settlement of any and all disputes between them:

1. **Recitals**. The parties acknowledge that the "WHEREAS" clauses preceding Paragraph 1 are true and correct, and are incorporated herein as material parts to this Agreement.

2. **Consideration**. In consideration for signing this Agreement and compliance with the promises made herein, COGENT shall pay to ALLEN the total sum of THIRTEEN THOUSAND ONE HUNDRED TWENTY-FIVE DOLLARS AND ZERO CENTS ($13,125.00), allocated as follows:

   a. COGENT shall issue payment in the amount of THREE THOUSAND NINE HUNDRED TWELVE DOLLARS AND FIFTY CENTS ($3,912.50), less all lawful taxable deductions, made at the usual and customary rate, made payable to "Mark Ryan Allen" The payment referenced in this subparagraph 2(a) represents the recovery of wages.

   b. COGENT shall issue payment in the amount of THREE THOUSAND NINE HUNDRED TWELVE DOLLARS AND FIFTY CENTS ($3,912.50), made payable to "Mark Ryan Allen" The payment referenced in this subparagraph 2(b) represents the recovery of sums other than wages, for which the appropriate IRS Form 1099 shall be issued.

   c. COGENT shall issue payment in the amount of FIVE THOUSAND THREE HUNDRED DOLLARS AND ZERO CENTS ($5,300.00), made payable to "Zipin, Amster & Greenberg, LLC," tax identification number 46-5054105. The payment referenced in

EXHIBIT 1

this subparagraph 2(c) represents the recovery of attorneys' fees and/or costs, for which the appropriate IRS Form 1099 shall be issued.

  d. The settlement proceeds discussed above shall be delivered to counsel for ALLEN within ten (10) business days of the satisfaction of all of the following conditions precedent:

    (1) receipt by counsel for COGENT of this Agreement executed by ALLEN; and

    (2) receipt by counsel for COGENT of an IRS Form W-9 and an IRS Form W-4 fully executed by ALLEN and an IRS Form W-9 fully executed by counsel for ALLEN.

  e. The parties agree and acknowledge that Court approval of this Agreement is necessary to provide for a full and complete release of any claims that ALLEN alleges under the Fair Labor Standards Act ("FLSA"). As a result, the parties agree to submit a Joint Motion to Approve Settlement and Joint Stipulation for Dismissal. Counsel for ALLEN shall hold all of the settlement proceeds in escrow until the Court issues an order in the Lawsuit approving this Agreement and dismissing with prejudice all claims that ALLEN asserted or could have asserted in the Lawsuit against COGENT. The parties agree and acknowledge that Court approval of this Agreement is a material term of the settlement between ALLEN and COGENT. The parties further agree and acknowledge that if the Court does not approve of this Agreement and dismiss with prejudice all claims that ALLEN asserted or could have asserted in the Lawsuit against COGENT, then this Agreement shall automatically terminate without any further action by the parties and this Agreement shall be null and void and have no further force and effect. In such event, nothing in this Agreement, or the fact that the parties attempted to enter into this Agreement, shall be used or construed by or against any party as a determination, admission, or concession of any issue of law or fact in the Lawsuit, and the parties do not waive, and instead expressly reserve, their respective rights with respect to the prosecution and defense of the Lawsuit as if the Agreement never existed. Further, if this Agreement becomes null and void, then counsel for ALLEN shall deliver to COGENT within five (5) business days any and all settlement proceeds previously delivered to counsel for ALLEN.

  f. ALLEN acknowledges that he specifically directed the allocation of the settlement proceeds between ALLEN and his counsel. ALLEN acknowledges that COGENT did not participate in any way or make any representation regarding the allocation of the settlement proceeds. The parties agree to bear their own attorneys' fees and costs, except as otherwise provided in this Agreement.

  g. Any employee tax obligation arising from the payments made to ALLEN under subparagraph 2(b) of this Agreement will be ALLEN's sole responsibility. ALLEN hereby agrees that in the event the United States Internal Revenue Service, or any federal, state, or local government agency requires COGENT to pay for or on behalf of ALLEN any amount in the nature of federal, state, or local taxes or surcharges, or any interest or penalties related to the above-referenced payment, ALLEN shall (1) reimburse COGENT for any such amounts paid out

or payable, (2) indemnify and hold COGENT harmless for such amounts, and (3) defend and/or pay all attorneys' fees necessary to defend COGENT in any and all actions brought against it to recover such amounts. ALLEN acknowledges that he has not relied on any statements or representations by COGENT with respect to the tax treatment of such payments.

3. **No Consideration Absent Execution of this Agreement**. ALLEN understands and agrees that he would not receive the monies and/or benefits specified in paragraph 2 of this Agreement without his execution of this Agreement and the fulfillment of the promises contained in this Agreement. The payments reflected in paragraph 2 of this Agreement are made in full and final settlement and resolution of the claims that ALLEN asserted or could have asserted in the Lawsuit.

4. **Release of Claims**. ALLEN knowingly and voluntarily releases and forever discharges, to the fullest extent permitted by law, COGENT, its parent corporations, affiliates, subsidiaries, parents' subsidiaries, divisions, predecessors, successors, assigns, joint employers, related companies, and the current and former employees, officers, directors, owners, executives, managers, contractors, insurers, committees, fiduciaries, executors, administrators, shareholders, representatives, attorneys, and agents thereof, and all persons and entities acting by, through, under, or in concert with any of the persons or entities referenced above (all collectively referred to throughout this Agreement as the "Released Parties"), of and from any and all claims, demands, actions, causes of action, costs, attorneys' fees, and all liabilities whatsoever, whether known and unknown, asserted and unasserted, fixed or contingent, which ALLEN has, had, or may ever have against any of the Released Parties from the beginning of time and up to and including the date ALLEN executes this Agreement. ALLEN's released claims include, without limitation: (i) all claims relating to or arising out of his compensation, employee benefits, fringe benefits, vacation pay, sick leave pay, hiring, employment, terms and conditions of employment, and separation from employment with any of the Released Parties; (ii) all claims asserted or that could have been asserted by him in the Lawsuit; (iii) all claims under any local, state, or federal wage-and-hour law concerning the payment of wages, including, without limitation, claims for unpaid overtime or other wages under the Virginia Minimum Wage Act or Virginia Code Sections 40.1-29-40.1-33; (iv) all claims, known or unknown, that he asserted or could have asserted against any of the Released Parties, at law or in equity, or sounding in contract (express or implied) or tort, including claims arising under any federal, state, or local laws of any jurisdiction that prohibit age, sex, gender, race, national origin, color, disability, religion, veteran, military status, sexual orientation, or any other form of discrimination, harassment, or retaliation, including, without limitation, any alleged violation of:

- Title VII of the Civil Rights Act of 1964, as amended;
- The Civil Rights Act of 1991;
- Sections 1981 through 1988 of Title 42 of the United States Code, as amended;
- The Employee Retirement Income Security Act of 1974, as amended;
- The Family and Medical Leave Act of 1993, as amended;
- The Immigration Reform and Control Act, as amended;
- The Fair Labor Standards Act, as amended;
- The Equal Pay Act, as amended;
- The Age Discrimination in Employment Act; as amended;

- The Americans with Disabilities Act, as amended;
- The Workers Adjustment and Retraining Notification Act, as amended;
- The Occupational Safety and Health Act, as amended;
- The Sarbanes-Oxley Act of 2002;
- The Virginia Fraud and Abuse Whistle Blower Protection Act;
- The Virginia Human Rights Act;
- The Rehabilitation Act, as amended;
- The Lilly Ledbetter Fair Pay Act;
- The Genetic Information and Nondiscrimination Act;
- The Civil Rights Act of 1866 and/or 1871;
- The Employee Polygraph Protection Act;
- The Uniformed Services Employment and Reemployment Rights Act of 1994;
- Section 1558 of the Patient Protection and Affordable Care Act of 2010;
- The Consolidated Omnibus Budget Reconciliation Act of 1985; and
- The National Labor Relations Act; and

(v) claims under any other federal, state, local, municipal, or common law whistleblower protection, discrimination, wrongful discharge, civil or human rights, anti-harassment, or anti-retaliation statute, regulation, or ordinance; (vi) claims for costs, fees, or other expenses including attorneys' fees incurred in the Lawsuit; and (vii) any other statutory, contractual, or common law claims related to or arising out of ALLEN's employment or separation from employment with COGENT, the Lawsuit and all alleged incidents or occurrences giving rise to ALLEN's claims in the Lawsuit, any claims ALLEN asserted or could have asserted in the Lawsuit, and any other disputes, known or unknown, that existed or exist among or between ALLEN and any of the Released Parties. The parties acknowledge that this Agreement shall not apply to rights or claims that may arise after the date ALLEN executes this Agreement. Additionally, nothing in this paragraph 4 or this Agreement is intended to limit or restrict any rights that cannot, by express and unequivocal terms of law, be limited, waived, or extinguished. ALLEN understands and agrees that he is releasing all of the Released Parties from any and all claims by which he is giving up the opportunity to recover any compensation, damages, or any other form of relief in any proceeding brought by him or on his behalf.

5. **Affirmations**.

a. ALLEN affirms that he has not filed, caused to be filed, or presently is a party to any claim, complaint, or action against COGENT in any forum or form, except for the Lawsuit.

b. ALLEN further affirms that he has been paid and/or has received all leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits to which he may be entitled and that no other leave (paid or unpaid), compensation, wages, bonuses, commissions and/or benefits are due to him, except as provided for in this Agreement.

6. **No Re-Application for Employment**. ALLEN permanently, unequivocally, and unconditionally waives any and all rights that he may now have, may have had in the past, or may have in the future to obtain or resume employment with COGENT. ALLEN agrees that he

4

will not apply for employment with COGENT and acknowledges that any application for employment he makes to COGENT may be rejected without cause and without any liability whatsoever. ALLEN understands and acknowledges that COGENT is and never shall be under any obligation to re-employ him, and COGENT's refusal to re-employ him will not subject COGENT to liability on any grounds.

7. **Non-Disparagement**. ALLEN agrees that he will not in the future (a) talk about or otherwise communicate to any third party in a malicious, disparaging, or defamatory manner regarding COGENT, or (b) make or authorize to be made any written or oral statement that may disparage the reputation of COGENT.

8. **Neutral Reference**. COGENT agrees to provide a neutral reference of employment for ALLEN upon receiving a request for reference from any prospective employer or reference check in which COGENT shall only confirm ALLEN's dates of employment with COGENT.

9. **Confidentiality**.

   a. In consideration of the obligations under this Agreement, ALLEN agrees that this Agreement, the terms and conditions hereof, and the underlying facts and circumstances of the claims alleged in the Lawsuit are strictly, and shall forever remain, confidential, and that neither he, nor his respective heirs, agents, executors, administrators, attorneys, legal representatives, directors, officers, and assigns shall disclose or disseminate any information concerning any such terms to any third person(s), including, but not limited to, representatives of the media or former or current employees of COGENT, under any circumstances, except that he may disclose the terms of this Agreement to his attorneys, spouse, accountants, tax advisors, and other similar professionals or the Internal Revenue Service, bank regulators, or other appropriate federal or state agencies ("Third Parties"). Any Third Party to whom such disclosure is made shall agree in advance to be bound by the terms of this paragraph. If ALLEN is required to disclose this Agreement or its terms or underlying facts pursuant to court order and/or subpoena, then he shall so notify COGENT, in writing via facsimile or overnight mail, within seventy-two (72) hours of receipt of such court order or subpoena, and shall simultaneously provide to COGENT a copy of such court order or subpoena. The notice shall be provided to: Cogent Communications, Inc., Attention: Robert Beury, Esq. (Vice President and General Counsel), 1015 31st Street, N.W., Washington, D.C. 20007; Facsimile: (202) 338-8798.

   b. The parties acknowledge and agree that the terms of paragraph 9(a) of this Agreement are a material inducement for the execution of this Agreement. Any actual or threatened disclosure or dissemination, other than as described above in paragraph 9(a), of this Agreement, the terms and conditions hereof, and/or the underlying facts and circumstances of the claims alleged in the Lawsuit, will be regarded as a breach of this Agreement and a cause of action shall immediately accrue for damages and injunctive relief.

   c. Consistent with the confidentiality provisions contained in this Agreement, and as a material inducement for entering into this Agreement, ALLEN further acknowledges that his counsel will jointly request with COGENT that this Agreement be

submitted for an in camera review and/or filed under seal as part of the parties' Joint Motion to Approve Settlement with the Court.

10. **Governing Law and Interpretation**. This Agreement shall be governed by and construed in accordance with the laws of the State of Virginia without regard to its conflict of laws principle. In the event that any party breaches any provision of this Agreement, the parties affirm that they may institute an action to specifically enforce any term or terms of this Agreement. The prevailing party shall be entitled to recover attorneys' fees and costs from the non-prevailing party in any enforcement action. Should any provision of this Agreement be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the release language, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect. The parties agree that the U.S. District Court for the Eastern District of Virginia, Alexandria Division shall retain jurisdiction to enforce the terms of this Agreement

11. **Nonadmission of Wrongdoing**. The parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at anytime for any purpose as an admission by COGENT of any liability or unlawful conduct of any kind.

12. **Amendment**. This Agreement may not be modified, altered, or changed except upon express written consent of both parties wherein specific reference is made to this Agreement.

13. **Successors and Assigns.** This Agreement shall be binding upon the parties hereto and upon their heirs, administrators, representatives, executors, divisions, parents, subsidiaries, parents' subsidiaries, affiliates, partners, limited partners, successors, and assigns, and shall inure to the benefit of said parties and each of them and to their heirs, administrators, representatives, executors, divisions, parents, subsidiaries, parents' subsidiaries, affiliates, partners, limited partners, successors, and assigns. ALLEN expressly warrants that he has not transferred to any person or entity any rights or causes of action, or claims released by this Agreement.

14. **Selective Enforcement**. The parties agree that the failure of any party to enforce or exercise any right, condition, term, or provision of this Agreement shall not be construed as or deemed to be a waiver or relinquishment thereof, and the same shall continue in full force and effect.

15. **Counterparts; Copy of Agreement Valid**. The parties agree that this Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall be deemed one and the same instrument. The parties further agree that executed copies of this Agreement shall be valid and binding, in the event the original executed counterparts to the Agreement are missing.

16. **Construction**. This Agreement shall be construed as a whole according to its fair meaning and intent, and not strictly for or against any party, regardless of who drafted or who was principally responsible for drafting this Agreement, or any specific term or condition thereof. ALLEN and COGENT participated in the negotiation and drafting of this Agreement

and had available to them the advice and assistance of independent counsel. As such, neither party may claim that any ambiguity in this Agreement should be construed against the other.

17. **Entire Agreement**. This Agreement sets forth the entire agreement between the parties hereto, and fully supersedes any and all prior oral or written agreements, promises, or understandings between or among the parties pertaining to the subject matter in this Agreement. ALLEN acknowledges that he has not relied on any prior oral or written representations, promises, statements, communications, inducements, understandings, or agreements of any kind made to him in connection with his decision to accept this Agreement, except for those set forth in this Agreement. Therefore, ALLEN understands that he is precluded from bringing any fraud or similar claim against any of the Released Parties associated with any such representations, promises, statements, communications, inducements, understandings, or agreements. The parties are entering into this Agreement based on their own judgment.

18. **Miscellaneous.** Notwithstanding any other provision of this Agreement to the contrary, the parties agree that this Agreement is not intended to prevent ALLEN from filing a charge or claim with any governmental agency charged with investigating employment claims, including, but not limited to, the Equal Employment Opportunity Commission, or, from participating in, cooperating with, or providing truthful evidence in connection with an investigation being conducted by a governmental agency responsible for investigating employment claims. ALLEN, however, understands and agrees that, based on his release of claims in this Agreement, any filing or participation does not give him the right to recover personally any monetary amounts or equitable relief (including, without limitation, reinstatement, back pay, front pay, damages, liquidated damages, or attorneys' fees) against any of the Released Parties in addition to the payments provided for in this Agreement.

ALLEN IS HEREBY ADVISED THAT HE HAS A REASONABLE PERIOD OF TIME TO REVIEW THIS CONFIDENTIAL SETTLEMENT AGREEMENT AND GENERAL RELEASE AND THAT HE SHOULD CONSULT WITH AN ATTORNEY PRIOR TO EXECUTION OF THIS CONFIDENTIAL SETTLEMENT AGREEMENT AND GENERAL RELEASE.

HAVING ELECTED TO EXECUTE THIS CONFIDENTIAL SETTLEMENT AGREEMENT AND GENERAL RELEASE, TO FULFILL THE PROMISES AND TO RECEIVE THE SUMS AND BENEFITS IN PARAGRAPH 2 ABOVE, ALLEN FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS CONFIDENTIAL SETTLEMENT AGREEMENT AND GENERAL RELEASE INTENDING TO WAIVE, SETTLE, AND RELEASE ALL CLAIMS HE HAS, HAD, OR MAY EVER HAVE AGAINST COGENT AND/OR ALL OF THE RELEASED PARTIES.

IN WITNESS WHEREOF, the parties hereto knowingly and voluntarily executed this Confidential Settlement Agreement and General Release as of the date(s) set forth below.

**MARK RYAN ALLEN:**

_/s/ Mark R. Allen_
Signature

Mark R. Allen
Printed Name

09/16/2014
Date

**COGENT COMMUNICATIONS, INC.:**

By: _/s/ RW Boury_

RW Boury
Printed Name

CLO
Title

9/18/14
Date

H-1055995_1

8